## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

KEITH A. EVANS                                  CIVIL ACTION NO.

VERSUS                                          19-542-SDD-RLB

EAST BATON ROUGE PARISH
SCHOOL BOARD

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendant, the East Baton Rouge Parish School Board ("Defendant"). Plaintiff, Keith A. Evans ("Evans") filed an *Opposition*,[2] to which Defendant filed a *Reply*.[3] For the following reasons, the Court finds that Defendant's *Motion* must be denied in part and granted in part.

## I.    BACKGROUND

Evans asserts that Defendant violated his rights under the Family and Medical Leave Act ("FMLA") and Americans with Disabilities Act ("ADA"). Evans worked for Defendant from September or October of 2012 until he was terminated on October 10, 2017.[4] Evans was a Special Education Inclusion teacher ("ESS teacher") at Tara High School ("Tara") until Principal Karen Triche ("Principal Triche") reassigned Evans to a position as a Social Studies teacher for the 2017–2018 school year.[5] As an ESS teacher,

---

[1] Rec. Doc. No. 25.
[2] Rec. Doc. No. 30.
[3] Rec. Doc. No. 31.
[4] Rec. Doc. No. 25-2, p. 1, 7; Rec. Doc. No. 38, p. 1, 4.
[5] Rec. Doc. No. 25-2, p. 3; Rec. Doc. No. 38, p. 3.

Evans worked in the classroom with another teacher; his job was to work with students with special needs.

Evans' issues with the Tara Administration began in April 2016 when he was issued a letter of non-compliance for failing to maintain accurate and complete student records and neglecting to develop and maintain necessary plans for students with disabilities.[6] In October 2016, a parent complained that Evans cursed at a student, but the ensuing investigation did not substantiate the claim.[7] During that investigation, the Tara Administration discovered that Evans had failed to create lesson plans for his students and notified Evans of the same, but Evans contends that he was not required to create lesson plans.[8] Also in October 2016, an English teacher filed a grievance alleging that Evans failed to collaborate and perform duties as an assigned ESS teacher.[9] Between September 26, 2016 and December 20, 2016, Evans was absent for 25 school days.[10]

On February 1, 2017, Evans requested intermittent leave under the FMLA due to his alleged diagnosis of adjustment disorder mixed with anxiety and depression.[11] There is a genuine issue of material fact as to whether Evans' FMLA request was granted.[12] On

---

[6] Rec. Doc. No. 25-2, p. 1; Rec. Doc. No. 38, p. 1.
[7] Rec. Doc. No. 25-2, p. 1; Rec. Doc. No. 38, p. 1.
[8] Rec. Doc. No. 25-2, p. 2; Rec. Doc. No. 38, p. 2.
[9] Rec. Doc. No. 25-2, p. 2; Rec. Doc. No. 38, p. 2.
[10] Rec. Doc. No. 25-2, p. 2. Evans avers in his response to Defendant's *Statement of Undisputed Facts* that this fact is in dispute. Rec. Doc. No. 38, p. 2. Evans cites to a chart in the *Complaint*. *Id.* The chart in the *Complaint* indicates that Evans was absent 25 times between September 26 and December 20. Rec. Doc. No. 1, p. 19–21.
[11] Rec. Doc. No. 38, p. 2; Rec. Doc. No. 42, p. 5; Rec. Doc. No. 30-1, p. 43.
[12] Defendant asserts that there is no genuine issue of material fact as to whether Evans was granted FMLA leave and that Evans was granted the leave. Evans asserts that there is a disputed factual issue. Rec. Doc. No. 30, p. 8. In support, he cites several sources. First, he attested that he never received notice of whether his leave request was granted or denied. Rec. Doc. No. 30-1, p. 23. However, his lack of receipt of notice does not bear on whether he was granted leave, but rather whether he knew he was granted leave. Second,

Document Number: 69379

February 14, 2017, Evans' doctor provided a letter stating that Evans could return to work on May 15, 2017; the doctor provided the end date as requested by Defendant.[13] On May 5, the Tara Administration issued Evans a letter of noncompliance for insubordination.[14] Between February 1, 2017 and May 22, 2017, Evans was absent for 15 or 16 school days.[15]

Principal Triche reassigned Evans to a position as a Social Studies teacher for the 2017–2018 school year.[16] On the first two days of the 2017–2018 school year (August 9 and 10), Evans called-in absent and specified "no substitute required" in the absence reporting system.[17] When a teacher inputs "'no substitute required,' the absence reporting system does not call out for a substitute."[18] After the Tara teachers returned to school for

---

Evans cites the fact that he was not paid 65% of his pay for the days he missed from February to May 2017, as he would have been had he been granted Extended Sick Leave. Rec. Doc. No. 30-1, p. 23. However, whether Evans was granted Extended Sick Leave is irrelevant to whether he was granted FMLA leave. Third, Evans cites Defendant's response to an interrogatory wherein Defendant asserted that it had no knowledge of Evans' requesting FMLA leave. Rec. Doc. No. 30-5, p. 7. This is a sworn statement of a party that, drawing reasonable inferences in favor of Evans, amounts to an assertion by Defendant that Evans was not granted medical leave. On the other hand, in support of a finding that FMLA leave was taken, Evans cites two sources. One is an unsigned notice of approval for Evans' FMLA leave (Rec. Doc. No. 30-4, p. 6.). The second is Daphne Donaldson's deposition testimony, wherein she asserts that Evans was granted FMLA and Extended Sick Leave. Rec. Doc. No. 30-3, p. 75. Daphne Donaldson is Defendant's Fed. R. Civ. P. 30(b)(6) designee, which, as Evans points out (Rec. Doc. No. 30, p. 23), renders her position on an issue binding upon the entity she represents. *Tellis v. LeBlanc*, 2020 WL 5732628 at *10-11 (W.D. La. Sep. 24, 2020) (citations omitted). However, Donaldson's testimony does not render nugatory Defendant's prior discovery response, and the jury must decide which account is correct.

[13] Rec. Doc. No. 38, p. 2; Rec. Doc. No. 42, p. 5.

[14] Rec. Doc. No. 38, p. 3; Rec. Doc. No. 42, p. 6.

[15] Rec. Doc. No. 38, p. 2; Rec. Doc. No. 42, p. 5.

[16] Rec. Doc. No. 25-2, p. 3; Rec. Doc. No. 38, p. 3.

[17] Rec. Doc. No. 25-2, p. 4; Rec. Doc. No. 38, p. 3.

[18] Defendant asserts this in its *Statement of Undisputed Facts*. Rec. Doc. No. 25-2, p. . Evans denies this assertion on lack of information and belief. Rec. Doc. No. 38, p. 4. Defendant has adequately supported this assertion under Local Rule 56(b)(1) and (f), and the Court deems this fact admitted for the purposes of summary judgment because Evans failed to provide a citation to the record that indicated the opposite. See Local Rule 56(c).  Local Rule 56(b)(1) provides in relevant part: "Each fact asserted in the statement shall be simply and directly stated in narrative without footnotes or tables and shall be supported by a record citation as required by subsection (f) of this rule." Local Rule 56(f) provides in relevant part: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this

the 2017–2018 school year, but before the students returned, Evans did not prepare lesson plans, a course syllabus, or any other instructional materials for the students assigned to his Social Studies class.[19]

Evans was placed on administrative leave on August 16, 2017.[20] He met with Human Resources on August 18 but did not request disability accommodations or FMLA leave at that meeting.[21] Evans was recommended for termination the same day.[22] On September 28, 2017, Superintendent Warren Drake ("Superintendent Drake") sent Evans a letter explaining that he was contemplating terminating Evans and providing the reasons why.[23] The reasons provided were: (1) "a pattern of absences at the beginning of the 2017–2018 school year [which] follows the absences that you have on record for the 2016–2017 school year"; (2) the loss of instructional time for students caused by Evans' inputting "no substitute required" in the absence reporting system; and (3) Evans' failure to have instructional materials provided for students on the first day of class in August 2017, and his failure to be present on that day.[24] By law, Evans had seven days to respond to the letter, but there is a factual dispute as to whether he received it within the

---

rule, shall be deemed admitted unless properly controverted." The Defendant cites to the deposition of Daphne Donaldson, Defendant's 30(b)(6) deponent, who testified in relevant part:

> The problem wasn't that he called on the sub system, it's that he would put that he did not need a substitute. So what happens is they don't call out a sub, so there's no adult in the classroom to service the students and the system automatically sends for a sub. Like, it automatically tells you, you know, says we're going to call out for a sub. You have to actually tell it not to call a substitute; and generally, teachers only use that option if, like, they're going on a field trip and you're taking all of your students with you on a field trip, right? You don't need a sub for that day, but you have to actually intentionally tell the system not to call a substitute.

Rec. Doc. No. 30-3, p. 46–48.
[19] Rec. Doc. No. 25-2, p. 5; Rec. Doc. No. 38, p. 4.
[20] Rec. Doc. No. 25-2, p. 6; Rec. Doc. No. 38, p. 4.
[21] Rec. Doc. No. 25-2, p. 6; Rec. Doc. No. 38, p. 4.
[22] Rec. Doc. No. 25-2, p. 6; Rec. Doc. No. 38, p. 4.
[23] Rec. Doc. No. 25-2, p. 7; Rec. Doc. No. 38, p. 4.
[24] Rec. Doc. No. 25-4.

seven days permitted for response.[25] On October 13, 2017, Superintendent Drake informed Evans that he was terminated effective October 10.[26]

Evans filed a complaint with the Department of Labor asserting FMLA violations.[27] The Department of Labor found that Defendant may not have issued appropriate notices to Evans pursuant to his request for medical leave on February 1, 2017, but Evans was nevertheless permitted to take that leave and suffered no loss of benefits or earnings.[28] The Department of Labor determined that Defendant maintained appropriate general notices and that Evans was not wrongfully terminated.[29] The Department of Labor also found that when Evans was absent between February 1 and May 24, 2017, he was working as a flight attendant.[30]

Many of the purported factual disputes are established by Evans' deposition testimony and his subsequent declaration. Defendant points out that both of these documents are self-serving and that the declaration was signed sometime in June 2021—after Defendant filed its *Motion* in May.[31] However, regardless of the convenient timing of the creation of the declaration, the Fifth Circuit has instructed that "an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving."[32] The Court will credit Evans' deposition testimony and declaration as long as the assertions therein are predicated on personal knowledge

---

[25] Rec. Doc. No. 25-2, p. 7; Rec. Doc. No. 38, p. 4.
[26] Rec. Doc. No. 25-2, p. 7; Rec. Doc. No. 38, p. 4.
[27] Rec. Doc. No. 25-2, p. 8; Rec. Doc. No. 38, p. 5.
[28] Rec. Doc. No. 25-2, p. 8; Rec. Doc. No. 38, p. 5.
[29] Rec. Doc. No. 25-2, p. 8; Rec. Doc. No. 38, p. 5.
[30] Rec. Doc. No. 25-2, p. 8; Rec. Doc. No. 38, p. 5.
[31] Rec. Doc. No. 31, p. 2; *See* Rec. Doc. No. 30-11.
[32] *C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011).

and not wholly conclusory.[33] Additionally, the Court will credit the deposition over the declaration should the two contradict.[34]

There is a dispute as to whether Evans knew how to use the substitute reporting system Tara implemented in 2016. Defendant submitted into the record a letter dated December 5, 2016 from "Tara Administration" to Evans that reminded Evans to report his absences in a timely manner and request a substitute when doing so.[35] The "employee signature" line is notated "refused to sign."[36] During his deposition, Evans asserted that he never received that letter but admitted that he and other teachers received a tutorial on the substitute reporting system.[37] Evans also testified in his deposition that the only information he received about the substitute reporting system was in the form of an illegible printout.[38] Evans contends that it was commonplace for teachers within Tara to be called to substitute because an outside substitute had not been obtained.[39] Additionally, it is undisputed that School Board policy GBRJ states that "[t]eachers shall be responsible for acquiring a substitute using the parish wide S.E.M.S. computer system."[40]

In his declaration, Evans asserts that, when Principal Triche reassigned him to Social Studies for the 2017–2018 school year, he told her that he suffered from the same

---

[33] *Id*.

[34] *Durant v. Brooks*, 826 F. App'x 331, 336 (5th Cir. 2020).

[35] Rec. Doc. No. 25-6.

[36] *Id*.

[37] Rec. Doc. No. 30-1, p. 58–59.

[38] *Id*. at 83.

[39] *Id*. at 32–34.

[40] Rec. Doc. No. 25-7, p. 1. In its *Statement of Undisputed Facts*, Defendant asserted that "School Board policy GBRJ provides that teachers are responsible for acquiring a substitute teacher through the automated absence reporting system." Rec. Doc. No. 25-2, p. 5. Evans denied this in his *Response*. His denial, however, is based on the assertion that this policy was, in practice, not always followed. He cites no record evidence to create a genuine issue of material fact as to GBRJ's written policy on the issue.

psychiatric condition that necessitated his FMLA request in February 2017; and, moreover, that a transfer to Social Studies would exacerbate that condition.[41] He also contends that he told Principal Triche he would "likely need to take time off intermittently during the 2017–2018 school year."[42] Defendant denies both of these assertions.

Defendant asserts that Evans did not make any preparations for students to start the 2017–2018 school year.[43] This included not having a textbook or instructional materials.[44] Evans qualifies this statement, citing his own declaration, wherein he stated that he asked Principal Triche and the chair of the Social Studies department for the textbook and instructional materials and they were not provided to him.[45] Daphne Donaldson ("Donaldson"), Defendant's 30(b)(6) deponent testified that, had Evans asked for the textbook, he would have received it; moreover, the curriculum guides were available on the district website.[46]

Evans asserts claims for: (1) interference or impairment of his rights under the FMLA; (2) failure to accommodate under the ADA; (3) FMLA retaliation; and (4) ADA discriminatory discharge. Defendant moves for summary judgment, arguing that some of Evans' FMLA claims are time-barred and his other claims are substantively untenable.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment

---

[41] Rec. Doc. No. 30-11, p. 3.
[42] *Id*.
[43] Rec. Doc. No. 25-2, p. 5.
[44] Rec. Doc. No. 38, p. 4.
[45] Rec. Doc. No. 30-11, p. 3.
[46] Rec. Doc. No. 30-3, p. 43–44.

Document Number: 69379

as a matter of law.[47] This determination is made "in the light most favorable to the opposing party."[48] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[49] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[50] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[51]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[52] All reasonable factual inferences are drawn in favor of the nonmoving party.[53] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[54] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to

---

[47] Fed. R. Civ. P. 56(a).

[48] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

[49] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

[50] *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[51] *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).

[52] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[53] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[54] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

support the complaint."'"[55]

## B. The FMLA, Generally

Congress enacted the FMLA to permit eligible employees "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious medical condition."[56] The statute guarantees eligible employees a total of twelve weeks of leave in a one-year period when the leave relates to the employee's serious medical condition.[57] Upon the employee's timely return, the employer must reinstate the employee "to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions."[58]

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave.[59] It is also unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.[60]

## C. FMLA Interference Claims

To establish a *prima facie* FMLA interference case, a plaintiff must show that: (1) he was an eligible employee, (2) the defendant was an employer subject to the FMLA's requirements, (3) the plaintiff-employee was entitled to leave, (4) he gave proper notice of his intention to take FMLA leave, (5) and the defendant-employer denied him the

---

[55] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[56] *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).
[57] 29 U.S.C. § 2612(a)(1).
[58] *Smith v. E. Baton Rouge Parish Sch. Bd.*, 453 F.3d 650, 651 (5th Cir. 2006).
[59] 29 U.S.C. § 2615(a)(1).
[60] 29 U.S.C. § 2615(a)(2).

Document Number: 69379

benefits to which he was entitled under the FMLA.[61] The plaintiff-employee must also show that he was prejudiced by that denial.[62]

Evans asserts that he requested leave twice: once in February 2017 and once in August 2017. Defendant argues that Evans' February 2017 interference claim is time-barred because the last alleged violation as to that claim must have occurred in May (when the school year ended) and Evans did not file this suit until August 2019. Evans rebuts that it is not time-barred because the statute of limitations did not begin to run until he was terminated, and alternatively, Defendant's violation was willful.  An FMLA claim must be brought within two years of the date of the alleged violation.[63] But if the alleged violation was willful, the time period is extended to three years.[64]

Evans' theory as to the February 2017 interference claim is as follows. Evans contends that he may not have received FMLA leave when he requested it in February.[65] He argues that he was entitled to that leave.[66] Further, he asserts that he was terminated because of his absences from February to May, even though those absences qualified for FMLA leave.[67]  Therefore, had Defendant not interfered with his FMLA rights when he made the February 2017 request by denying leave, it could not have terminated him as a result of those absences.[68] Evans filed suit in August 2019, and he states that because an FMLA interference plaintiff must suffer prejudice before he can sue, his claim did not

---

[61] *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012); *Anderson v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 464 F.Supp.2d 562, 567 (E.D. La. 2006).
[62] *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021).
[63] 29 U.S.C. § 2617.
[64] 29 U.S.C. § 2617(c)(2).
[65] Rec. Doc. No. 30, p. 33–35.
[66] *Id*. at p. 33–35.
[67] *Id*. at p. 33–35.
[68] *Id*. at p. 33–35.

Document Number: 69379

accrue until he was terminated.[69]

29 U.S.C. § 2617(c)(1) provides that an action for FMLA interference or retaliation must be brought "not later than 2 years after the date of the *last event constituting the alleged violation* for which the action is brought." The alleged violations that Evans complains of as to his February 2017 interference claim ended in May 2017 when his requested leave would have expired.[70] Therefore, it appears that Evans' February 2017 interference claim is time-barred.

The Fifth Circuit has not had occasion to consider whether the FMLA statute of limitations begins running at the time absences that should have been credited as FMLA leave occur or when the plaintiff-employee is terminated as result of those absences. But the Eighth Circuit considered this issue in *Barrett v. Illinois Department of Corrections*.[71] The plaintiff in *Barrett* argued that she was wrongly denied leave on three occasions, which, coupled with absences she did not challenge, caused her to meet the employer-defendant's maximum of twelve unexcused absences per year.[72] The Eighth Circuit held that each wrongly denied request for leave was its own actionable FMLA claim.[73] The court found an impairment of rights in that the request was wrongly denied and prejudice in that the number of unexcused absences on the plaintiff's record increased.[74]

Like Evans, the *Barrett* plaintiff argued that, even though she *could* have filed suit after each denial of leave, she was not *required* to file suit until the final prejudice—

---

[69] *Id*. at 35.
[70] *Id*.
[71] *Barrett v. Illinois Dep't of Corr*., 803 F.3d 893, 896 (7th Cir. 2015).
[72] *Id*. at 896.
[73] *Id*. at 897.
[74] *Id*.

Document Number: 69379

termination—occurred.[75] The Eighth Circuit rejected that argument for two reasons. First, "it assumes there can be more than one last event under § 2617(c)(1)" which is "not a reasonable reading of the statute."[76] Second, after noting that the plaintiff's argument was "really a plea for a tolling rule that would hold the limitations period in abeyance indefinitely and revive a stale denial-of-leave claim years later, when the employee is fired based in part on the contested absence," the *Barrett* court held that "[n]othing in § 2617(c)(1) supports such an open-ended tolling rule."[77] In response to the plaintiff's protest that it would be infeasible to sue for every violation of the FMLA since the initial consequences of those violations may not be severe, the court noted that the bifurcated enforcement structure of the FMLA "suggests that Congress was aware that private litigation may not always be the most practical or desirable means of vindicating rights under the FMLA."[78]

The Court adopts in full the Eighth Circuit's reasoning in *Barrett*. Moreover, the Court emphasizes that § 2617(c) is extremely clear in that the limitations period commences upon the "last event constituting the alleged violation for which the action is brought." Evans' February 2017 interference claim is based on the alleged denial of his FMLA-qualified leave from February to May 2017.[79] Defendant did not interfere with Evans' rights under the FMLA when it terminated him for, among other purported reasons, excessive absenteeism. This is true even if some of those absences should have qualified as FMLA leave. The Court holds that Evans' February 2017 FMLA interference claim became ripe when his absences were unexcused and that the statute of limitations began

---

[75] *Id.* at 899.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] Rec. Doc. No. 30, p. 2.

running on those dates.

The Court turns to Evans' argument that Defendant's conduct in allegedly wrongly denying Evans' FMLA leave request was willful such that the three-year statute of limitations applies. The Fifth Circuit has stated that "to establish a willful violation of the FMLA, a plaintiff must show that his employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.'"[80] "[A] negligent violation is not a willful violation, and an unreasonable violation does not necessarily constitute a willful violation."[81]

After sifting through Evans' argument and unsupported conjecture, the Court is left with one adequately supported example of alleged willfulness: Defendant did not have specific forms for requesting FMLA leave.[82] At the time Evans applied for leave in February 2017, it is undisputed that Defendant did not have application forms specific to FMLA leave.[83]  However, as Donaldson explained in her deposition, Defendant would have automatically considered Evans for both extended sick leave and FMLA leave upon submission of the extended sick leave form that he submitted.[84] Based on that unrebutted assertion, the Court finds that Defendant's lack of an FMLA-specific form was not a willful violation of the FMLA. The February 2017 interference claim is time-barred.

Turning to Evans' August 2017 interference claim, Defendant concedes the first three elements for the purposes of this *Motion*, arguing only that Evans did not give proper

---

[80] *Mozingo v. Oil States Energy, Inc.*, 661 Fed. Appx. 828, 830 (5th Cir. 2016).
[81] *Id*.
[82] Rec. Doc. No. 30, p. 39–40.
[83] Rec. Doc. No. 30-3, p. 17.
[84] *Id*. at 17–18.

notice of his intent to take leave.[85] Defendant asserts that Evans did not submit the

required paperwork[86] to request FMLA leave, and Evans did not make a verbal request

for FMLA leave.[87] Evans counters that he told Principal Triche in June and again in August

2017 that he would need intermittent leave during the 2017–2018 school year.[88] Evans'

citations to his own declaration suffice to establish a genuine issue of material fact as to

whether he told Principal Triche that he would need intermittent leave for the 2017–2018

school year.[89] Therefore, the question is: assuming Evans told Principal Triche he would

need intermittent leave, did that constitute proper notice of his intent to take FMLA leave?

29 C.F.R. § 825.303(c) provides in relevant part:

> An employee shall provide sufficient information for an employer to
> reasonably determine whether the FMLA may apply to the leave request.
> Depending on the situation, such information may include that a condition
> renders the employee unable to perform the functions of the job…. When
> an employee seeks leave for the first time for a FMLA-qualifying reason, the
> employee need not expressly assert rights under the FMLA or even mention
> the FMLA. When an employee seeks leave due to a qualifying reason, for
> which the employer has previously provided the employee FMLA-protected
> leave, the employee must specifically reference either the qualifying reason
> for leave or the need for FMLA leave.

The Court finds that a reasonable jury[90] could conclude that Evans' alleged

---

[85] Rec. Doc. No. 25-1, p. 13. Defendant does not expressly concede that Evans was prejudiced or that he was denied benefits to which he was entitled. However, Defendant fails to provide argument as to those elements. As the moving party, Defendant has the initial burden to demonstrate there is no genuine issue of material fact as to each element of Evans' claims. Fed. R. Civ. P. 56. It has failed to meet its initial burden as the prejudice and denial of benefits elements. As such, the Court will only consider its arguments as to notice.

[86] It is unclear if Defendant had FMLA-specific forms at this point in time or if it was still using the Extended Sick Leave form to apply for FMLA leave.

[87] Rec. Doc. No. 25-1, p. 14.

[88] Rec. Doc. No. 30, p. 36.

[89] See *supra*, the text accompanying footnotes 32–33.

[90] In *Lanier v. University of Texas Southwestern Medical Center*, 527 F. App'x 312 (5th Cir. 2013), the Fifth Circuit indicated that the sufficiency of an employee's notice is a jury question. The court stated, "No reasonable jury could conclude that the text message [the plaintiff] sent was sufficient to apprise [her employer] of her intent to request FMLA leave to care for her father." *Id.* at 317.

statement to Principal Triche that he "still suffered from the same psychiatric condition that necessitated [his] FMLA request in February 2017," coupled with his request "to take time off intermittently during the 2017–2018 school year,"[91] constitutes sufficient employee notice under the FMLA. However, Defendant contends that, regardless of whether Evans gave verbal notice of his intent to take FMLA leave, he did not submit the required forms.[92]

29 C.F.R. § 825.303(d) provides in relevant part: "An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." Defendant has not pointed the Court to summary judgment evidence as to its notice and procedural requirements for requesting FMLA leave during the relevant time period. Therefore, the court cannot determine whether Evans' failure to submit the forms before the start of the 2017–2018 school year violated Defendant's polices. As movant, Defendant bears the burden of establishing that there is no genuine issue of material fact as to whether Evans violated its notice and procedural requirements for requesting FMLA leave. Defendant has not carried its burden here.

Defendant purports to challenge whether Evans was denied benefits and whether he was prejudiced,[93] but it offers neither evidence nor argument as to those points. Therefore, Defendant has failed to meet its initial burden. Summary judgment is granted as to Evans' February 2017 claim because it is time-barred. But summary judgment must be denied as to Evans' August 2017 interference claim.

---

[91] Rec. Doc. No. 30-11, p. 3.
[92] Rec. Doc. No. 25-1, p. 14.
[93] *Id.*

Document Number: 69379

### D.  Failure to Accommodate under the ADA Claim

Defendant seeks summary judgment on Evans' failure to accommodate claim. Evans argues that teaching Social Studies would have exacerbated his psychiatric condition; therefore, Defendant was required to make reasonable accommodations before moving him to that position. Evans contends that Defendant did not make reasonable accommodations and that granting accommodations would not have amounted to an undue burden on Defendant.

The Fifth Circuit has stated:

> The ADA prohibits covered employers from discriminat[ing] against a qualified individual on the basis of disability. Discrimination includes failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship. Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations.[94]

Defendant concedes that it is a covered entity.[95] Further, for the purposes of this *Motion* only, Defendant does not dispute that Evans was disabled and was qualified to perform the essential functions of his job with or without accommodations.[96] Defendant only argues that Evans did not provide notice of his disability to Defendant.

The Court finds that there is a genuine issue of material fact as to whether Evans informed the Tara Administration about his disability and request for accommodations. An employee making a request "need not utter any magic words, [but he] must explain

---

[94] *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal citations omitted).
[95] Rec. Doc. No. 25-1, p. 16.
[96] *Id.*

that the adjustment in working conditions or duties [he] is seeking is for a medical condition-related reason."[97] Contrary to Defendant's argument, there is competent record evidence that Evans provided notice to Defendant. In his declaration, Evans states that he met with Principal Triche in June 2017 and informed her that his reassignment as a Social Studies teacher would exacerbate his psychiatric condition because it would be more stressful than his position as an ESS teacher.[98] He asked to be reassigned back to his old position or transferred to an ESS position at another school.[99] Because of this dispute, summary judgment is inappropriate, and Defendant's *Motion* is denied as to Evans' ADA failure to accommodate claim.

### E.  ADA Discriminatory Discharge Claim

Title I of the ADA covers employment discrimination and provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[100] "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability."[101] An ADA discrimination plaintiff may present his case by direct or circumstantial evidence.[102] "If the plaintiff produces direct evidence that discriminatory animus played a role in the employer's adverse employment decision, the burden of persuasion shifts to the

---

[97] *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444 (5th Cir. 2017).
[98] Rec. Doc. No. 30-11, p. 3.
[99] *Id*.
[100] 42 U.S.C. § 12112(a)
[101] *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).
[102] *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019).

Document Number: 69379

defendant who must prove that it would have taken the same action despite any discriminatory animus."[103] But "[i]f the plaintiff only produces circumstantial evidence of discrimination, the well-known burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*[104] guides [the] inquiry."[105]

Evans offers no direct evidence of his ADA discriminatory discharge claim, so the *McDonnell Douglas* standard applies. First, Evans must make out a *prima facie* case of discrimination.[106] If he can, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the employment action.[107] If Defendant satisfies its burden, the burden shifts back to Evans "to produce evidence from which a jury could conclude that [Defendant's] articulated reason was pretextual."[108]

Defendant concedes the first two elements of Evans' *prima facie* case for the purposes of this *Motion* only.[109] Therefore, the Court need only consider whether Evans was subject to an adverse employment decision on account of his disability. Specifically, the Court focuses on whether Plaintiff has plausibly asserted a nexus between his disability and the decision to terminate him, since it is undisputed that Evans was subject to an adverse employment decision.

Evans argues that he has sufficiently asserted a causal nexus because of the temporal proximity between his request for ADA accommodation and his termination.[110] Defendant does not fully brief this issue.

---

[103] *Id.*
[104] 411 U.S. 792, 802 (1973).
[105] *Nall*, 917 F.3d at 340.
[106] *Id.* at 341.
[107] *Id.*
[108] *Id.* at 342.
[109] Rec. Doc. No. 25-1, p. 16.
[110] Rec. Doc. No. 30, p. 48.

Document Number: 69379

In *Campos v. Steves & Sons, Inc.*,[111] an FMLA retaliation case, the Fifth Circuit considered whether a one-month period between the end of the plaintiff's FMLA leave and his termination established a sufficient causal link.[112] The Fifth Circuit concluded that "a month is close enough in time to create a causal connection."[113] The Fifth Circuit also cited a previous, unreported Fifth Circuit case in which the court held that a gap of two-and-one-half months established causation in a Title VII retaliation claim, "a conclusion with which [the *Campos* court] agree[d]." Therefore, a gap of two-and-one-half months between the invocation of federal labor law rights and the adverse employment action can establish a causal nexus.

Here, as relevant to Evans' ADA discriminatory discharge claim, the evidence before the Court indicates that Evans first requested an accommodation for his adjustment disorder mixed with anxiety and depression in June 2017.[114] The parties agree that Evans was recommended for termination on August 16, 2017.[115] Therefore, Evans was recommended for termination[116] within two-and-one-half-months after he sought an accommodation. This suffices to establish a causal nexus at this stage.

Defendant asserts that Evans was terminated for "ignoring proper protocols for notification of absences and for failing to prepare for the arrival of his students."[117] Evans' pre-termination letter provided three reasons: (1) a pattern of absences at the start of the

---

[111] *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527 (5th Cir. 2021).
[112] *Id*. at 527–28.
[113] *Id*. at 528.
[114] Rec. Doc. No. 30-11, p. 3.
[115] Rec. Doc. No. 25-2, p. 6; Rec. Doc. No. 38, p. 4.
[116] The Court finds it irrelevant that Evans was not formally terminated until October. The date that he was recommended for termination is the appropriate date to consider because that is when Defendant's desire to terminate Evans manifested.
[117] Rec. Doc. No. 25-1, p. 17.

2017–2018 school year that continued the pattern of absences from the previous school year; (2) Evans' purported placing of the disclaimer "no substitute required" in the substitute teacher notification system which resulted "in a loss of instructional time for the students in that a teacher was not present in the classroom"; and, (3) Evans' classroom was not prepared for the first days of the 2017–2018 school year in that there were no instructional materials for the students, and he was absent.[118] Evans does not dispute that Defendant has offered several legitimate, non-discriminatory reasons for Evans' termination,[119] so the burden shifts back to Evans to demonstrate a genuine issue of material fact as to pretext for *each* of Defendant's proffered non-discriminatory reasons.[120]

Evans argues that Defendant's three proffered justifications for terminating him were pretextual for numerous reasons. Some of Evans' arguments apply to all three of Defendant's proffered justifications, while others apply to one or two of Defendant's proffered justifications. The Court finds that Evans has not established a genuine issue of material fact as to pretext for Defendant's second justification.

Evans asserts that Defendant has offered shifting and inconsistent statements for its decision to fire him. "[A]n employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual."[121] Evans argues that Defendant proffered new, additional reasons for his

---

[118] Rec. Doc. No. 30-4, p. 54
[119] Rec. Doc. No. 30, p. 13.
[120] *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) ("We [the Fifth Circuit] have long recognized that to satisfy step three of the *McDonnell Douglas* framework, a plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.") (internal citations omitted). *See also, Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 320 (5th Cir. 2016) (applying the same rule in an ADA discriminatory discharge case).
[121] *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 234 (5th Cir. 2015) (internal citations omitted).

termination in its factual background in its *Motion*.[122] Evans also contends that Defendant offered new, additional reasons for his termination in response to discovery requests.[123] Evans admits that the same three reasons were provided to him on multiple occasions.[124]

The Court agrees with Defendant that it did not offer additional reasons for Evans' termination in its *Motion*. Defendant characterizes the additional allegations in its *Motion* as context of Evans' full employment history and an explanation of why Evans was reassigned to Social Studies.[125] Defendant never claimed in its *Motion* that the additional information about Evans' employment history was one of the reasons for his termination. As such, the Court does not consider Defendant's expository section as evidence of shifting and inconsistent statements.

Evans also argues that Defendant's discovery responses reveal pretext. In response to an interrogatory asking why Evans was terminated, Defendant responded, "Mr. Evans was terminated due to poor performance, absenteeism, and failure to follow protocols with respect to absences despite having been previously counseled regarding the same."[126] After identifying documents that set forth those reasons, Defendant continued, "[t]he School Board would further state that, based on information and belief, Mr. Evans was working at another job on some days that he was on and/or requested medical leave with Defendant."[127] Evans clutches onto the "poor performance" and "another job" reasons as inconsistent explanations that establish a genuine issue of material fact as to pretext.

---

[122] Rec. Doc. No. 30, p. 16–17.
[123] *Id*. at 16–17.
[124] *Id*. at 16.
[125] Rec. Doc. No. 31, p. 6.
[126] Rec. Doc. No. 30-6, p. 3.
[127] *Id*. at 3.

The Court finds that no reasonable jury could conclude that the "additional" reasons provided in the discovery response demonstrate pretext. "Poor performance" is not inconsistent with, or additional to, the three reasons consistently provided to Evans. Rather, it is a broad, vague term that includes the three provided reasons within its scope.

While the "another job" allegation is listed in response to the interrogatory, it is not inconsistent with any of the other reasons provided in the response, which, notably, are the same reasons provided to Evans repeatedly. Further, Donaldson testified that Evans purportedly working another job when absent from school was not part of Defendant's decision to terminate him.[128] The Court finds that no reasonable jury could find that the response to the interrogatory is a shifting or inconsistent statement as the response included the three original reasons and merely added an additional consideration that is relevant to Defendant's after-acquired evidence doctrine argument, addressed *infra*.

Evans also argues that the pre-termination letter exaggerated facts to support his dismissal.[129] He hones in on the second and third reasons for termination: his act of "placing the disclaimer, '[n]o sub required' in the Substitute Management System (SEMS) when notifying the system of your absences result[ed] in a loss of instructional time for the students in that a teacher was not present in the classroom" and "[o]n August 9, 2017 your classroom was not prepared for students on the first day of [s]chool in that there were no instructional materials provided for students (inclusive of lesson plans, course syllabus, etc.) and, most importantly[,] you were absent."[130] Evans contends that there was no loss of instructional time, and Defendant's substitute policy was divorced from

---

[128] Rec. Doc. No. 30-3, p. 115–120.
[129] Rec. Doc. No. 30, p. 17–21
[130] Rec. Doc. No. 30-4, p. 54.

Document Number: 69379

actual practice.[131] As to Evans' failure to provide instructional materials to students, he asserts that Defendant did not provide him with the instructional materials.[132]

Defendant counters that Evans' students were not left unattended because of the quick actions of the Tara Administration in procuring a substitute.[133] Defendant argues that Evans was aware of the policy for requesting a substitute but failed to follow it.[134] Finally, Defendant avers that Evans failed to prepare his classroom for the first day of school but does not directly address his argument that Defendant was at fault for this failure.[135]

The Fifth Circuit has held that evidence that an employer intentionally exaggerating performance concerns may suffice to establish pretext and avoid summary judgment.[136] Donaldson testified that a member of the Tara Administration let the students into the classroom and watched them until a substitute arrived on the days Evans was absent to start the 2017–2018 school year.[137] Thus, Evans argues the students were not unattended, and there was no loss of instructional time. However, the pre-termination letter does not refer to a particular date that Evans failed to properly request a substitute. Rather, it refers to his pattern of failing to properly follow the substitute policy such that students were left unattended and lost instructional time at various points throughout his tenure at Tara. Evans' argument on this point is meritless.

In the Court's view, the critical issue is whether Tara's substitute policy differed in

---

[131] Rec. Doc. No. 30, p. 18–19.
[132] *Id*. at 20–21.
[133] Rec. Doc. No. 31, p. 7.
[134] *Id*.
[135] *Id*. at 8.
[136] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 639 (5th Cir. 2011).
[137] Rec. Doc. No. 30-3, p. 51–52.

Document Number: 69379

practice from how it was written on paper. If that is the case, and Tara operated under a looser substitute policy than its written policy suggests, a jury could find that Evans' failure to conform to the unenforced, written policy was not one of the true causes for his termination. In other words, if Defendant terminated Evans for violations of rules it did not follow, then a jury could find that Defendant's invocation of the "rules" was pretextual.

Evans largely relies on his own deposition testimony in support of his argument that Tara's substitute policy differed in practice from its written rules. Evans testified that it was commonplace for teachers at Tara to cover for one another when a substitute was not obtained.[138] He testified that this happened three to four times a week and that he was frequently called to cover classes for other teachers at Tara.[139] He further testified that he assumed another teacher would cover for him when he entered "no substitute required" into the system.[140] Donaldson confirmed that teachers do cover for one another but clarified that "we prefer not to do that…"[141] She also noted that Tara's preference is for the teacher to "try to call to get a sub so that you can have coverage for the students."[142]

Evans' testimony does not suggest that the actual practice of teachers at Tara was to input "no substitute required" into the system. Rather, he testified as to what happens when a substitute is not obtained, but there is no summary judgment evidence that other teachers entered "no substitute required" into the system. Stated differently, he introduced evidence that his practice differed from Tara's written rules and that he sometimes had to

---

[138] Rec.  Doc. No. 30-1, p. 32.
[139] *Id*.
[140] *Id*. at 34.
[141] Rec. Doc. No. 30-3, p. 49.
[142] *Id*.

cover classes for other teachers when a substitute was not obtained. But he did not introduce evidence that other teachers' substitutes were not obtained because those teachers entered "no substitute required" into the system. The Court will not indulge this logical leap.

Further, Evans argues that the "'Substitute Personnel Policy'…is similarly disconnected from actual practice."[143] He cites the portion of the policy providing that teachers should first call the substitute reporting system, then place a call to the school to notify the school of the absence.[144] Evans testified that this was not a "true and correct statement of the policy."[145] But he attempted to buttress that assertion with the statement that "[t]his is the first time I've ever heard of calling the school and I never did a double call to report an absence."[146] The record evidence demonstrates that his termination was because he failed to follow the school policy. Evans' failure to follow the policy is not evidence that it was not the policy, and Evans offered no summary judgment evidence to show that other similarly situated teachers disregarded the policy as he did.

Evans claims to have not been aware of the contents of the substitute policy that Defendant implemented in December 2016.[147] In other words, Evans claims that he knew that the policy existed, but he did not know what it was. Assuming *arguendo* that Evans did not know the substance of the substitute policy, the Court must consider another issue: could a reasonable jury, after finding that Evans did not know the substance of the policy, conclude that Evans' violation of the policy was not one of the reasons for his

---

[143] Rec. Doc. No. 30, p. 19.
[144] *Id.* (citing Rec. Doc. No. 25-7, p. 1).
[145] Rec. Doc. No. 30-1, p. 61.
[146] *Id.*
[147] Rec. Doc. No. 30, p. 20.

termination, but instead was pretext for discrimination?

On the record before the Court, the answer must be "no." Evans' ignorance of the policy is not evidence of Defendant's animus. Evans has not argued or produced evidence that indicates that other teachers violated the substitute policy and were not reprimanded. Such evidence would tend to indicate that Evans was terminated for a reason other than violation of the substitute policy. Here, however, Evans has only shown that he was terminated for violating what was indisputably the substitute teacher policy of Defendant at the time of his termination.[148] His knowledge of the substance of the policy, or lack thereof, does not bear on whether that termination was discriminatory. If Evans was terminated for violating a policy of which he was unaware that may have been "unfair." But employment discrimination law only ensures that employment decisions are nondiscriminatory—not that they are "fair."

Evans' only other argument that applies to Defendant's second proffered explanation for Evans' termination is that Defendant failed to follow its own policies and procedures.[149] Defendant's sick leave policy provides in relevant part:

> An employee who is absent for six (6) or more consecutive days shall be required to present a certificate from a physician certifying such absence upon return to work. In the case of repeated absences of less than six days because of illness, Defendant reserves the right to require verification of illness.[150]

Evans argues that Defendant deviated from its own procedures because it did not request a verification from Evans when he was absent for two or three days in August

---

[148] See *supra*, note 30.
[149] Rec. Doc. No. 30, p. 21–22.
[150] Rec. Doc. No. 30-8, p. 1–2.

Document Number: 69379

2017.[151] This argument is meritless. The sick leave policy clearly grants Defendant discretion to require verification in the event of an absence lasting less than six days. The Court finds that there was no deviation from policy when Defendant did not request such verification.

Evans does not raise further arguments that call into question Defendant's second reason for his termination. As such, Evans failed to meet his burden of establishing pretext as to all of Defendant's proffered reasons. Therefore, the Court grants summary judgment on Evans' ADA discriminatory discharge claim.[152]

### F. FMLA Retaliation Claims

To establish a *prima facie* FMLA retaliation case, a plaintiff must show that: (1) "he was protected under the FMLA," (2) "he suffered an adverse employment action," and (3) "the adverse decision was made because he sought protection under the FMLA."[153] "The third element requires the employee to show there is a causal link between the FMLA-protected activity and the adverse action."[154]

Evans contends that there is direct evidence of FMLA retaliation.[155] Direct evidence is evidence that "if believed, would prove the existence of a fact (i.e. unlawful discrimination) without any inferences or presumptions."[156] Under Evans' theory, if he was granted FMLA leave in February 2017, then the pre-termination letter that cites his absences for the 2016–2017 school year as a reason for his termination must be

---

[151] Rec. Doc. No. 30, p. 22.
[152] *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010); *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 320 (5th Cir. 2016).
[153] *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017).
[154] *Id*. (cleaned up).
[155] Rec. Doc. No. 30, p. 7.
[156] *Ray v. UPS*, 587 F. A'ppx 182, 187 (5th Cir. 2014).

Document Number: 69379

referencing those FMLA-covered absences.[157] Therefore, argues Evans, Defendant asserted that it was considering terminating him, in part, for absences protected by the FMLA. This is not direct evidence because the Court would have to presume that Evans' absences in the 2016–2017 school year were covered under the FMLA. In other words, the Court would have to decide the genuine issue of material fact of whether Evans was granted FMLA leave. Therefore, the Court proceeds under the *McDonnell Douglas*[158] burden shifting framework.

Defendant concedes the first two prongs of Evans' *prima facie* case for the purposes of this *Motion*.[159] Therefore, the Court need only consider whether Evans has raised a genuine issue of material fact as to the third prong of his *prima facie* case—that the adverse decision was made because he sought protection under the FMLA.

While the Court finds that Evans has not presented direct evidence of discrimination, Evans has submitted circumstantial evidence. This is because if Evans was granted FMLA leave (which the Court cannot determine), then the pre-termination letter implies that his termination was based, in part, on FMLA protected leave during the 2016–2017 school year. Thus, Evans has carried his burden as to his *prima facie* case.

Defendant asserts that Evans was terminated for "ignoring proper protocols for notification of absences and for failing to prepare for the arrival of his students."[160] Evans does not dispute that Defendant has offered several legitimate, non-discriminatory reasons for Evans' termination,[161] so the burden shifts back to Evans to demonstrate a

---

[157] Rec. Doc. No. 30, p. 9.
[158] 411 U.S. 792 (1973).
[159] Rec. Doc. No. 25-1, p. 15.
[160] Rec. Doc. No. 25-1, p. 17.
[161] Rec. Doc. No. 30, p. 13.

genuine issue of material fact as to pretext.

The Court's pretext analysis for Evan's ADA discriminatory discharge claim applies equally here. Evans' cannot establish a genuine issue of material fact as to whether Defendants' second reason for his termination—his failure to properly use the substitute system—was pretextual. The Fifth Circuit has "long recognized that to satisfy step three of the *McDonnell Douglas* framework, a plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates."[162] For the reasons provided above, Evans cannot meet this standard. Therefore, the Court grants summary judgment on Evans' FMLA retaliation claim.

### G.  After-Acquired Evidence Doctrine

Defendant asserts that the after-acquired evidence doctrine should bar Evans from reinstatement, front pay, and lost wages from the date Defendant discovered he was working a second job as a flight attendant.[163] Defendant states that this would have been a terminable offense but does not provide any evidentiary support for that assertion.[164]

The Fifth Circuit has explained: "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."[165]

Further:

> The rationale underlying consideration of after-acquired evidence is that the employer should not be impeded in the exercise of legitimate prerogatives and the employee should not be placed in a better position than he would

---

[162] *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) (internal citations omitted).
[163] Rec. Doc. No. 25-1, p. 17.
[164] Rec. Doc. No. 31, p. 5, n. 18.
[165] *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1108 (5th Cir. 1995) (internal citations omitted).

have occupied absent the discrimination. Cutting off relief at the time that a legitimate discharge…accomplishes these ends.[166]

Defendant has not produced any evidence that "the wrongdoing was of such severity that [Evans] in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." The issue is reserved for the jury.

## III.    CONCLUSION

For the foregoing reasons, Defendant's *Motion*[167] is **GRANTED in part and DENIED in part.**

Defendant's *Motion* is denied as to Evans' August 2017 FMLA interference claim and his ADA failure to accommodate claim. Defendant's *Motion* is granted as to Evans' ADA discriminatory discharge claim, his FMLA retaliation claim, and his February 2017 FMLA interference claim.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 8, 2022</u>.

_Shelly D. Dick_

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[166] *Id*. at 1108–09.
[167] Rec. Doc. No. 25.

Document Number: 69379